[No. D028873. Fourth Dist., Div. One. Mar. 29, 1999.]

KATHLEEN KINNEY, Plaintiff and Respondent, v.
UNITED HEALTHCARE SERVICES, INC., et al., Defendants and
Appellants.

1324

**COUNSEL**

Seyfarth, Shaw, Fairweather & Geraldson, David D. Kadue and Ann M. O'Regan for Defendants and Appellants United HealthCare Services, Inc., and Linda Hansen-Kyle.

John T. Farmer & Associates and Anthony T. Case for Defendant and Appellant Linda Hansen-Kyle.

Clarice J. Letizia for Plaintiff and Respondent.

**OPINION**

**McINTYRE, J.**—United HealthCare Services, Inc., and Linda Hansen-Kyle (collectively, United) appeal an order denying their motion to require Kathleen Kinney to pursue her employment-based claims against them in

arbitration. United contends that the trial court erred in finding that the arbitration provision contained in its employee handbook was unenforceable for lack of mutuality and argues that none of Kinney's other contentions in the proceedings below provide a basis for finding the provision unenforceable. We find the terms of the arbitration agreement so unconscionable as to preclude its enforcement and thus affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Kinney worked as a utilization control consultant for Metra Health and its predecessor in interest, beginning in June 1989. In early 1996, United acquired Metra Health. At that time, United required its employees to sign a document acknowledging their receipt of the United HealthCare Corporation Employee Handbook (the Handbook). The Handbook included an arbitration policy, as follows:

"A. STATEMENT OF INTENT

". . . [United] believes that the resolution of [employment-related] disagreements [is] best accomplished by internal dispute review . . . and, where that fails, by arbitration conducted under the rules of the American Arbitration Association. Employees and [United] benefit from the use of private arbitration because it usually results in quicker, less costly resolution of disagreements than litigation in state or federal courts. For these reasons, [United] has adopted this Employment Arbitration Policy (the 'Policy').

". . .While arbitration is an essential element of your employment relationship and is a condition of your employment, nothing in this Policy creates or is intended to create any other specific term or condition relating to your employment. [United] reserves the right to alter, amend, modify, or revoke this Policy at its sole and absolute discretion at any time with or without notice. . . .

"B. SCOPE OF POLICY

"Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. . . .

"A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state or local statute, regulation of

common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Employee Retirement Income Security Act of 1974, and all applicable amendments; state human rights or fair employment practices laws; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory. . . .

"The Policy does not require that [United] initiate the arbitration process in regard to any dispute. In addition, [United] is not required to follow the steps of either [the internal dispute review procedure] or the Policy before initiating or implementing any disciplinary action, or before asserting any claim, demand or action against an employee for breach of any restrictive covenant, wrongful disclosure of confidential information, or any other actions which may constitute a breach of contract, a breach of [United]'s Code of Conduct, a breach of a common law duty, or a breach or violation of either civil or criminal law."

The policy also set forth the parameters of the arbitration proceedings. It provided that the duration of the proceeding would not exceed one day, subject to a showing of good cause for an "extended hearing," and restricted the scope and extent of discovery, providing that interrogatories could be used only to seek the identification of potential witnesses and that each party would be limited to twenty-five document requests and two 8-hour depositions. It also included limitations on an employee's substantive right of recovery. In accordance with its terms, the arbitrator was precluded from finding that the employment relationship was other than at will. Further, it limited the recovery of compensatory and punitive damages for employment discrimination in accordance with the provisions of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), as amended; according to United, the title VII damage limitation applicable to its employees is currently $300,000. The policy also expressly permitted an award of attorney fees to United in certain situations, but making no similar provision for the employee to recover such fees.

In February 1996, Kinney returned to work after a hospitalization. At that time, she was required by United's supervisory personnel to sign a form acknowledging her receipt of the Handbook, and agreeing to certain of the company's policies, including the arbitration policy. The acknowledgment

form provided in part "I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under [United]'s policy."

In January 1997, Kinney filed a complaint against United in the superior court, asserting claims for employment discrimination and retaliation, breach of contract, infliction of emotional distress, negligent supervision, tortious conduct and interference with prospective economic advantage. The complaint alleged that, beginning in June 1995, Kinney was subjected to physical sexual harassment by Hansen-Kyle, her supervisor. It further alleged that Kinney's complaints to United went unanswered, except that Hansen-Kyle began to harass Kinney about her work in retaliation for her complaints about the sexual harassment.

United filed a motion to dismiss or stay the court proceedings, seeking to require Kinney to submit her claims to arbitration. Kinney opposed the motion, contending that the agreement to arbitrate employment-related claims was unenforceable against her. After hearing oral argument, the court denied United's motion. United appeals.[1]

## DISCUSSION

■ A written provision in a contract to submit to arbitration a dispute arising out of the contract is valid, irrevocable and enforceable except on "such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2 [contracts subject to the Federal Arbitration Act (FAA)]; Code Civ. Proc., § 1281 [contracts governed by state arbitration law].) Accordingly, the existence of a valid agreement to arbitrate is determined by

[1]The parties and the trial court described the issue as one of lack of mutuality of obligation. However, the doctrine of mutuality requires that each party to a bilateral contract make promises that are binding on him or her. (See *Grubb & Ellis Co.* v. *Bello* (1993) 19 Cal.App.4th 231, 238 [23 Cal.Rptr.2d 281].) Where one party makes no binding promises or makes definite promises that are subject to being withdrawn at the pleasure of the promisor, the contract is deemed to be unenforceable as lacking in mutuality. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 228 pp. 236-237.) In this case, Kinney has not suggested that United failed to make any binding promises in exchange for her agreement to the terms of the Handbook or the arbitration clause itself. In fact it appears that United has an obligation under the policy to submit to arbitration in the event that an employee initiates claims in that forum. Perhaps based on the existence of this rather de minimis obligation, Kinney's argument focuses on the unfairness or one-sided nature of the Handbook's requirement that she submit employment-related claims to arbitration while United was not similarly obligated to submit claims of its own for resolution there. As so stated, the argument raises the issue of whether the arbitration clause is unconscionable.

reference to state law principles regarding the formation, revocation and enforceability of contracts generally. (*Cione* v. *Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 634 [68 Cal.Rptr.2d 167]; see generally, *Doctor's Associates, Inc.* v. *Casarotto* (1996) 517 U.S. 681, 686-687 [116 S.Ct. 1652, 1655-1656, 134 L.Ed.2d 902] [state law defenses may invalidate an agreement to arbitrate governed by the FAA]; *Engalla* v. *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-973 [64 Cal.Rptr.2d 843, 938 P.2d 903] [contracts subject to state arbitration law].) ▌ In the proceedings below, Kinney asserted that the arbitration provision was an unconscionable adhesion contract and thus unenforceable. We agree.

▌ In *Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807 [171 Cal.Rptr. 604, 623 P.2d 165], the California Supreme Court addressed the criteria for determining whether an arbitration clause set forth in an adhesion contract is unenforceable on grounds of unconscionability pursuant to common law. In accordance with *Graham*, ". . . there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable.' [Citations.]" (*Id.* at p. 820.)

In 1979, the Legislature enacted Civil Code section 1670.5, which adopted the standards of unconscionability set forth in section 2-302 of the Uniform Commercial Code, to be applied to all contracts. (Stats. 1979, ch. 819, § 3, p. 2827.) Civil Code section 1670.5, subdivision (a) provides "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made[,] the court may refuse to enforce the contract, or . . . any unconscionable clause . . . ." (See also *A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 484 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) The doctrine of unconscionability generally arises where there is " '. . . an absence of meaningful choice on the part of one of the parties[,] together with contract terms which are unreasonably favorable to the other party.' " (*Id.* at p. 486, quoting *Williams* v. *Walker-Thomas Furniture Company* (D.C. Cir. 1965) 350 F.2d 445, 449 [121 App.D.C. 315, 8 A.L.R.3d 1297] see also *Graham* v. *Scissor-Tail, Inc., supra,* 28 Cal.3d at p. 820 [a contract of adhesion is unenforceable if its terms are unduly oppressive or outside the reasonable expectations of the weaker party].)

■ California courts analyze unconscionability as having a procedural and a substantive element.[2] (*Stirlen* v. *Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1531-1533 [60 Cal.Rptr.2d 138]; *Ellis* v. *McKinnon Broadcasting Co.* (1993) 18 Cal.App.4th 1796, 1803-1804 [23 Cal.Rptr.2d 80].) Although both elements must be present before a contract or contract provision is rendered unenforceable on grounds of unconscionability, they are reviewed in tandem such that "the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause." (*Carboni* v. *Arrospide* (1991) 2 Cal.App.4th 76, 83 [2 Cal.Rptr.2d 845].)

## A. Procedural Unconscionability

"Procedural unconscionability" concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 486.) It focuses on factors of oppression and surprise. (*Ibid.*) The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party. (*Ibid.*; see *California Grocers Assn.* v. *Bank of America* (1994) 22 Cal.App.4th 205, 214 [27 Cal.Rptr.2d 396]; *Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 769 [259 Cal.Rptr. 789].)

■ In this case, there appears to be no dispute that the contract satisfies this component of procedural unconscionability. United provided the Handbook to its employees and, according to the Handbook, each employee was required to acknowledge his or her consent to its terms, including the arbitration provision, as a condition of continued employment with the company. In these circumstances, it is clear that the employees had no opportunity to negotiate regarding the terms of the Handbook. (*Engalla* v. *Permanente Medical Group, Inc., supra,* 15 Cal.4th at pp. 984-985; *Perdue* v. *Crocker National Bank, supra,* 38 Cal.3d at pp. 924-925.)

■ The second component of procedural unconscionability encompasses an aspect of surprise, with the terms to which the party supposedly agreed being hidden in a prolix printed form drafted by the party seeking to enforce them. (*American Software, Inc.* v. *Ali* (1996) 46 Cal.App.4th 1386,

[2] Although these elements were not specifically addressed in the *Graham* court's analysis of unconscionability at common law, they are part of the analytical framework utilized in cases applying the Uniform Commercial Code provision on which Civil Code section 1670.5 is based. (See *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 925, fn. 9 [216 Cal.Rptr. 345, 702 P.2d 503].)

1390-1391 [54 Cal.Rptr.2d 477]; *Ellis* v. *McKinnon Broadcasting Co., supra*, 18 Cal.App.4th at p. 1803.) ■ In this case, after providing Metra Health's employees assurances that their jobs would not be affected by its takeover of the company, United provided Kinney with a copy of the Handbook, contained in a large three-ring binder, and told her that she needed to sign the form acknowledging receipt of the Handbook. Kinney was pressured to sign the form that same day, precluding her from having the time to review the Handbook or the arbitration policy set forth therein. Notably, the language used in the policy to describe its scope is so extensive as to render it difficult for a layperson to read and understand the parameters of the policy. This is particularly true regarding the unilateral nature of the arbitration obligation; after a statement of intent extolling the virtues of utilizing the arbitration process, the policy provides, in a fairly lengthy paragraph, that United is not required to pursue any claim of its own in an arbitration setting.

Athough the acknowledgment form itself referred to the arbitration policy, the form did not specify the details of that policy, including the fact that United was not also required to submit claims to arbitration, that United could modify the policy at any time, with or without notice, and that the policy significantly limited Kinney's procedural and substantive rights. Given that these terms worked so clearly to United's advantage, and to the detriment of its employees, the element of surprise is satisfied. (See *Graham* v. *Scissor-Tail, Inc., supra*, 28 Cal.3d at p. 820, fn. 18 [lack of notice is a significant factor in determining unconscionability]; *Beynon* v. *Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 705 [161 Cal.Rptr. 146] [provision in an adhesion contract limiting the liabilities and duties of the stronger party, contrary to the reasonable expectations of the weaker party, will not be enforced unless such provisions are clear and conspicuous].) In any event, to the extent that Kinney knew or was on notice of a general requirement that her claims had to be pursued in arbitration rather than in some other forum, this does not preclude a finding that the arbitration provision is nonetheless unenforceable. (*Ellis* v. *McKinnon Broadcasting Co., supra*, 18 Cal.App.4th at p. 1805.)

B. *Substantive Unconscionability*

■ "Substantive unconscionability" focuses on the terms of the agreement and whether those terms are "so one-sided as to '*shock the conscience.*'" (*American Software, Inc.* v. *Ali, supra*, 46 Cal.App.4th at p. 1391, italics in original; *Stirlen* v. *Supercuts, Inc., supra*, 51 Cal.App.4th at p. 1532.) ■ Here, although United appears to be obligated under the

policy to submit to arbitration where an employee has initiated arbitration proceedings based on an employment-related claim, it is under no obligation to pursue any employment-related claims it might assert against an employee in arbitration. Kinney contends that, because the arbitration obligation is essentially unilateral, the provision imposing it is substantively unconscionable.

United relies on *Grubb & Ellis Co.* v. *Bello, supra,* 19 Cal.App.4th 231, in arguing that the absence of a mutual agreement to submit claims to arbitration is insufficient as a matter of law to render the arbitration clause unenforceable. In *Bello,* a real estate broker sought to arbitrate his claim for commissions arising out of a real estate listing agreement signed by the owner/seller of the properties and providing for arbitration of any dispute between the parties. The arbitration resulted in an award in the broker's favor and, on appeal from an order of the superior court confirming the award, the seller contended that, because the broker had not initialed that provision as required by Code of Civil Procedure section 1298, subdivision (c) (section 1298(c)), the agreement to arbitrate was not mutual and thus was not enforceable. Based in large measure on the language of section 1298(c), the court concluded that the obligation to arbitrate was not required to be mutual in order to be enforceable. (*Grubb & Ellis Co.* v. *Bello, supra,* 19 Cal.App.4th at p. 239.) It held that "[a]lthough [the broker's] failure to assent in writing might have had some effect on whether it could have been required to arbitrate, the statute does not purport to vitiate [the seller's] assent in such a situation. Nothing in established contract law proscribes a contract provision from subjecting only one party to arbitration." (*Ibid.*)

A number of cases have questioned the validity of the holding in *Bello* to the extent that it suggests that the absence of a reciprocal obligation to submit to arbitration does not render the agreement unenforceable. (See *Marcus & Millichap Real Estate Investment Brokerage Co.* v. *Hock Investment Co.* (1998) 68 Cal.App.4th 83, 90 [80 Cal.Rptr.2d 147]; *Stirlen* v. *Supercuts, Inc., supra,* 51 Cal.App.4th at p. 1539, citing *Hull* v. *Norcom, Inc.* (11th Cir. 1985) 750 F.2d 1547, 1550.) We too question whether the application of the *Bello* holding withstands analysis under general contract principles regarding unconscionability.

In any event, however, *Bello* has no bearing on the issue of whether a nonreciprocal agreement, requiring the weaker party to an adhesion contract to submit claims to arbitration, is unenforceable against that party on grounds of unconscionability. In *Bello,* the arbitration clause was statutorily mandated, rather than demanded by a party of superior bargaining power,

and the broker who had not initialed the arbitration clause was nonetheless seeking to enforce his rights in that forum—a far cry from the circumstances of this case. Thus the analysis of *Bello* has no persuasive weight here.

Faced with the issue of whether a unilateral obligation to arbitrate is unconscionable, we conclude that it is. The party who is required to submit his or her claims to arbitration foregoes the right, otherwise guaranteed by the federal and state Constitutions, to have those claims tried before a jury. (U.S. Const., Amend. VII; Cal. Const., art. I, § 16.) Further, except in extraordinary circumstances, that party has no avenue of review for an adverse decision, even if that decision is based on an error of fact or law that appears on the face of the ruling and results in substantial injustice to that party. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 28, 32 [10 Cal.Rptr.2d 183, 832 P.2d 899].) By contrast, the party requiring the other to waive these rights retains all of the benefits and protections the right to a judicial forum provides. Given the basic and substantial nature of the rights at issue, we find that the unilateral obligation to arbitrate is itself so one-sided as to be substantively unconscionable.

The unconscionable nature of the unilateral arbitral obligation is heightened by certain other terms of United's arbitration policy. Given that United is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against United. Further, to the extent the arbitration clause forecloses any finding that the employment relationship was other than at will, an employee is precluded from demonstrating that United could only terminate for good cause so as to support a recovery of contract damages that might otherwise be available. Similarly, the arbitration policy caps the employee's recovery of compensatory and punitive damages for employment discrimination.

The procedural and substantive limitations included in United's arbitration policy fail to satisfy even a "modicum of bilaterality," being so one-sided and unfair to United's employees that its terms are unenforceable. (*Saika* v. *Gold* (1996) 49 Cal.App.4th 1074, 1079 [56 Cal.Rptr.2d 922].) Although there is a strong public policy favoring arbitration, as the *Saika* court aptly observed, "[t]hat policy is manifestly undermined by provisions in arbitration clauses which seek to make the arbitration process itself an offensive weapon in one party's arsenal." (*Id.* at p. 1081.) A review of United's arbitration policy reflects just such an attempt here and the principles of equity that underlie the enforcement of arbitration agreements will not compel such a result. (*Id.* at pp. 1081-1082.)

## DISPOSITION

The order denying United's motion to dismiss or stay the proceedings pending arbitration is affirmed.

Kremer, P. J., and Reed, J.,* concurred.

---

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.