Karen P. FARAC, DPM, Plaintiff,

v.

PERMANENTE MEDICAL GROUP,
et al., Defendant.

No. C 01–03222 CRB.

United States District Court,
N.D. California.

Jan. 17, 2002.

Law Office of Kathleen B. Alvarado, San Francisco, CA, for Plaintiff.

Janet H. Leder, Sherri K. McElroy, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, Victor C. Thuesen, Law Offices of Victor C. Thuesen, Petaluma, CA, for Defendant.

## ORDER COMPELLING ARBITRATION

BREYER, District Judge.

Plaintiff Karen Farac ("Farac") brings this sexual harassment and discrimination action against her employer The Permanente Medical Group ("TPMG"), Kaiser Foundation Hospitals, Kaiser Foundation Health Plan, Kaiser Permanente and doctors Alan Zeichner ("Zeichner") and Steven Seibert ("Seibert").

Defendants TPMG and Seibert move to compel arbitration pursuant to an employment agreement. For the reasons stated below, the motion to compel arbitration is GRANTED.

## BACKGROUND

TPMG hired Farac in November 1998 as a pool physician in the department of Podiatry. In February of 2001, Farac became a staff podiatric physician. At that time Farac and TPMG entered into a "Podiatric Physician Employment Agreement." The arbitration provision of that agreement stated, in part:

VII. *DISPUTE RESOLUTION AND ARBITRATION*

A. *Scope of Arbitration*

In the event of any controversies or disputes between Podiatric Physician and the Medical Group (including its officers, agents and employees), which arise in connection with or relate to Podiatric Physician's employment, including claims which are based on conduct that occurs after the conclusion of such employment, the parties agree that such controversies shall be submitted to final and binding arbitration pursuant to the provisions of California Code of Civil Procedure Section 1280 *et seq.* (except as expressly excluded below). This agreement includes any claims of employment discrimination and other unlawful conduct such as, but not limited to, claims arising under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Rehabilitation Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, the California labor Code, the California Constitution, the Family Rights Act, all as amended, and any other federal, state, county or municipal law or regulation governing the relationship between employers and employees. The parties hereto expressly waive their rights, if any, to have such matter heard by a court or a jury, whether state or federal.

While working as a pool physician, Farac worked under the supervision of defendant Zeichner who was chief of the department of podiatry. Shortly before Farac became a staff podiatrist, defendant Seibert became the chief of the department and Farac's direct supervisor.

Farac filed her complaint against defendants on August 22, 2001. The complaint alleges four causes of action under Title VII, 42 U.S.C. §§ 200e *et seq.*, and five violations of the California Fair Employment and Housing Act ("FEHA"). The basis of Farac's complaint is that Zeichner repeatedly harassed Farac physically and verbally for a period of 21 months and that the other defendants knew about the harassment or authorized and ratified the conduct. Farac also alleges that she was discriminated and retaliated against for reporting the conduct.

Defendants TPMG and Seibert bring this motion to compel arbitration pursuant to the employment agreement.

## DISCUSSION

In determining whether arbitration should be compelled, the Court must address two separate questions. First, does federal law preclude arbitration of these claims? Second, even if federal law does not generally preclude arbitration of these

claims, is this specific agreement unconscionable such that it should not be enforced?

## I. Does Federal Law Preclude Arbitration?[1]

■ The starting point in examining the federal law is the Federal Arbitration Act ("FAA"). The FAA, originally enacted in 1925, provides that an arbitration provision in a written contract is enforceable. *See* 9 U.S.C. § 2 ("A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The FAA permits a federal court to stay proceedings when an issue in the litigation is arbitrable, *see* 9 U.S.C. § 3, and authorizes a court to compel arbitration. *See* 9 U.S.C § 4. The Act was intended "to reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) 24.

The FAA is now generally seen as embodying a presumption in favor of arbitration. Much of the current law of the FAA can be traced to *Gilmer* where the United States Supreme Court reviewed a claim brought by a securities dealer against his employer under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The plaintiff was seeking to avoid arbitration, but the Court held that an arbitration clause is not rendered unenforceable merely because the plaintiff seeks to enforce a statutory right. *See Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647 ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). The Court reasoned that by entering an arbitration agreement the parties have not sacrificed any substantive rights conferred by the underlying statute, but instead have merely agreed to submit their claims to an arbitrator rather than a court. *See id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The Court ultimately determined that the ADEA did not preclude application of the FAA.

To overcome the FAA's presumption that a court should enforce an arbitration provision, a plaintiff bringing a statutory claim must demonstrate, through the text of the statute, legislative history, and the underlying purpose of the law, that Congress intended to preclude a waiver of judicial remedies for the statutory right involved. *See id.* (citing *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346; *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)).

The presumption in favor of arbitration was overcome in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir.1998), where the Ninth Circuit held that, under the Civil Rights Act of 1991, "employees may not be required, as a condition of employment, to waive their right to bring future Title VII claims in court." *Id.* at 1190. This conclusion was based on a lengthy examination of the text and legislative history of the Civil Rights Act of 1991 which revealed a congressional inten-

---

1. The defendants argue that federal law is inapplicable because the arbitration agreement includes a choice of law provision stating that California law will govern. Such a provision, however, cannot be used to force arbitration of federal statutory claims not properly subject to arbitration. The question here is whether federal law precludes arbitration of plaintiff's claims.

tion to "preclude a waiver of a judicial forum" for Title VII claims. *Id.* Defendant admits that *Duffield* would preclude arbitration of this action, but contends that *Duffield* was overruled by *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

Accordingly, the question before this Court is whether *Circuit City* overruled *Duffield* or whether *Duffield* remains the law of this circuit. Two California district court opinions have concluded that *Circuit City* overruled *Duffield*. *See Eftekhari v. Peregrine Financials & Securities, Inc.,* 2001 WL 1180640 (N.D.Cal.2001); *Olivares v. Hispanic Broadcasting Corp.,* 2001 WL 477171 (C.D.Cal.2001). This Court agrees. In arguing for the opposite result, plaintiff relies on an overly constricted view of the Court's ruling in *Circuit City.*

The dispute presented in *Circuit City* concerned interpretation of section 1 of the FAA which exempts from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This presented a potential contradiction between the introductory specific language ("seamen, railroad employees") and the later broader language ("any other class of workers engaged in . . . interstate commerce"). The Court concluded that the general language "embrace[d] only . . . those objects enumerated by the preceding specific words," and held that only contracts of transportation workers were excluded from the FAA *Circuit City,* 121 S.Ct. at 1308–09.

The holding of *Duffield* was not squarely presented to the Court in *Circuit City.* *Circuit City* clarified the scope of the FAA by restricting the exception set out in sec-

tion 1 to transportation workers. By contrast, *Duffield* relied not on the scope of the FAA, but rather the language and legislative history of the Civil Rights Act of 1991.[2]

While the focus may have been different, *Circuit City* implicitly overruled *Duffield.* *Circuit City* expresses a strong federal presumption in favor of enforcing arbitration agreements. The presumption holds for statutory claims of employment discrimination. *Circuit City* itself involved a FEHA antidiscrimination claim, a statute very similar to Title VII. As the Court stated in Circuit City:

> The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law.

*Id.* at 1313. This language speaks specifically to the arbitration of federal statutory employment discrimination claims. On the basis of this reasoning, expounded in the context of a decision to compel arbitration of an employment discrimination claim, the Court concludes that *Circuit City* implicitly overruled *Duffield. See Scott v. Burns Intern. Sec. Services, Inc.,* 165 F.Supp.2d 1133, 1137–38 (D.Haw.2001).

Plaintiff makes much of the fact that this case is factually distinguishable from the district court opinions cited above because Farac actually objected to the arbitration provision in her employment agreement. But after objecting, Farac signed the agreement. The fact that she objected only serves to clarify that Farac knew exactly what she was agreeing to—bolstering the conclusion that Farac entered into

---

**2.** The *Circuit City* decision does not mention *Duffield* at all. The Ninth Circuit decision that was reversed in *Circuit City* was based on *Craft v. Campbell Soup Co.,* 161 F.3d 1199 (9th Cir.1998) which held that, based on the language of the FAA itself, the FAA does not apply to labor or employment contracts at all. *Duffield* would have been an independent ground for the Ninth Circuit's holding.

the agreement knowing that she would be required to arbitrate any potential disputes. The fact that Farac knew she was waiving her right to a judicial forum is not a basis upon which to distinguish cases holding that *Duffield* has been overruled.

## II. Is Arbitration Agreement Unconscionable?

■■■ Even though federal law does not preclude arbitration, the general prerequisites for arbitration must be satisfied before this Court will compel arbitration. "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 98, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). *See also* 9 U.S.C. § 2; Cal.Code Civ.Proc., § 1281. That is, arbitration agreements are subject to the same scrutiny as other contracts. In this case, defendant alleges that the arbitration agreement is unconscionable.

■■■ California Civil Code section 1670.5(a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract or ... any unconscionable clause ..." Similarly, under the FAA, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

■■■ California courts analyze unconscionability as having a procedural and substantive element. *See Kinney v. United Healthcare Services*, 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348 (1999); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1212–13, 78 Cal.Rptr.2d

533 (1998); *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1531, 60 Cal.Rptr.2d 138 (1997). This analysis applies equally to arbitration agreements as to other contractual provisions. *Id.* "Although both elements must be present before a contract or contract provision is rendered unenforceable on grounds of unconscionability, they are reviewed in tandem such that 'the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability is required to annul the contact or clause.'" *Kinney*, 70 Cal.App.4th at 1329, 83 Cal.Rptr.2d 348 (quoting *Carboni v. Arrospide*, 2 Cal. App.4th 76, 83, 2 Cal.Rptr.2d 845 (1991)).

In the context presented here, the inquiry concerning procedural unconscionability centers on whether the employment contract is a contract of adhesion. *See Armendariz*, 24 Cal.4th at 113, 99 Cal. Rptr.2d 745, 6 P.3d 669. The substantive unconscionability inquiry focuses on whether the contract falls outside the expectation of the weaker (or adhering party) or is "unduly oppressive." *Id.*

### A. Procedural Unconscionability

Applying the principles outlines above, it is clear that the employment contract in this case was adhesive. *See Armendariz*, 24 Cal.4th at 114–15, 99 Cal.Rptr.2d 745, 6 P.3d 669. Signing the contract was an explicit condition of employment.

### B. Substantive Unconscionability

Plaintiff argues that three provisions of the agreement were substantively unconscionable. They are considered in turn.

1. **"A claim shall be waived and forever barred if ... the arbitration hearing is not commenced within one year after the date the Demand For Arbitration was served."**

Plaintiff claims that the above provision is unconscionable because it results in a

complete bar even where delay is beyond the party's control. Defendant counters that this provision binds both parties equally and therefore cannot be oppressive to plaintiff.

The California Supreme Court requires a "modicum of bilaterality" before enforcing an arbitration agreement. *See Armendariz*, 24 Cal.4th at 117, 99 Cal.Rptr.2d 745, 6 P.3d 669. One-sidedness, in favor of the employer, is permissible if there is a justification based on business realities. *Id.* In this case, the agreement is perfectly bilateral on its face, and plaintiff has not shown it to be otherwise in operation. The provision exceeds the bilaterality test and is therefore not oppressive.

2. **"A claim shall be waived and forever barred if ... either party fails to pursue the arbitration claim in accord with the procedures prescribed herein with reasonable diligence."**

Plaintiff claims that this provisions is oppressive based on its ambiguity. Leaving aside whether ambiguity could ever amount to oppression, this provision, like the one above, is perfectly bilateral. It applies to both parties equally, and there is nothing suggesting it is oppressive.

3. **"Either party, at is expense (or jointly, if so agreed), may arrange for and pay the cost of a court reporter...."**

Plaintiff claims this provision effectively forecloses appeal because of the cost of a court reporter. Again, this provision is perfectly bilateral, and accordingly not suspect as oppressive. Furthermore, parties bear the cost of producing a transcript for appeal in a judicial forum as well. Imposing a similar cost in an arbitration agreement is permissible. *See Armendariz*, 24 Cal.4th at 110–11, 99 Cal.Rptr.2d 745, 6 P.3d 669.

## CONCLUSION

For the reasons stated above, the Court hereby COMPELS arbitration of plaintiffs claims against defendants the Permanente Medical Group and Steven Seibert. All defendants are ordered to continue participating in discovery.

**IT IS SO ORDERED.**