Filed 12/18/14  Gillespie v. Western Pacific Housing Management CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| REBECCA RENEE GILLESPIE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WESTERN PACIFIC HOUSING MANAGEMENT, INC.,<br><br>Defendant and Appellant. | D066354<br><br><br><br>(Super. Ct. No. CIVSS710814) |

APPEAL from a judgment of the Superior Court of San Bernardino, John M. Pacheco, Judge.  Reversed.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff, Catherine J. Coble, Angel H. Ho and Vanessa C. Krumbein for Defendant and Appellant.

Kingsley and Kingsley, Eric B. Kingsley, Darren M. Cohen, Liane Katzenstein Ly and Kelsey M. Szamet for Plaintiff and Respondent.

In this action for alleged Labor Code violations as to meal and rest periods brought by plaintiff Rebecca Renee Gillespie, defendant Western Pacific Housing Management,

Inc. (Western Pacific) brought a motion to compel arbitration, pursuant to a mutual arbitration agreement (MAA). The court denied the motion finding (1) Western Pacific waived its right to enforce the agreement by litigating the action for four years before seeking to compel arbitration, and (2) the MAA was unconscionable.

On appeal Western Pacific asserts the court erred by (1) finding the MAA was unconscionable and (2) finding that it waived the right to compel arbitration. We conclude that Western Pacific did not waive its right to compel arbitration. We also conclude that the MAA is not unconscionable. Further, as we shall discuss, the class action waiver is enforceable. However, we also conclude that the class action waiver cannot apply to Gillespie's claim under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). Accordingly, we reverse the court's order denying the motion to compel arbitration and remand this matter for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Parties*

Beginning in March 2006, Gillespie was employed by Western Pacific. Western Pacific is a homebuilding company based in Texas that builds homes in California. Gillespie worked as a sales representative in Southern California selling homes.

B. *The MAA*

Shortly after she was hired, Gillespie signed the MAA.

The MAA provided that all employment-related claims, including those related to wages, were subject to arbitration:

2

"Employee and the Company . . . agree that all disputes and claims between them, including those relating to Employee's employment with the Company and any separation therefrom . . . shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator  . . . .  Claims subject to arbitration under this Agreement include without limitation claims for discrimination or harassment; *wages, benefits of other compensation . . . .*"  (Italics added.)

The MAA also provides that the "arbitrator may hear only Employee's individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding."

C. *The Underlying Litigation*

In October 2007 Gillespie filed a class action lawsuit on behalf of herself and all individuals employed by Western Pacific in the position of salesperson within California from four years prior to the filing of the action.  The complaint alleged Western Pacific improperly classified her and other salespersons as exempt from overtime law and that, as a result, she and other salespersons did not receive required meal and rest breaks.  The complaint asserted causes of action for violation of meal and rest break law, penalties pursuant to Labor Code section 203, and violation of Business and Professions Code section 17200.  In November 2007 Gillespie filed a first amended complaint adding a cause of action for violation of Labor Code section 2699.  The parties thereafter stipulated to transfer venue from Alameda County to San Bernardino County.

Western Pacific answered the complaint several weeks after the California Supreme Court's decision in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*), in which class action waivers in employment agreements were held to be unenforceable,

3

and, if parties sought to enforce such waivers, they could be forced into class action arbitration. Recognizing that moving to compel arbitration would, in light of *Gentry*, be futile, the parties proceeded to partially litigate Gillespie's claims. The parties agreed (1) to send a precertification notice to putative class members and (2) to the production of basic contact information about putative class members. Western Pacific deposed Gillespie, but Gillespie took no depositions.

D. *The Stay of Proceedings*

In December 2009 Western Pacific filed an ex parte application seeking to stay all proceedings pending the California Supreme Court's resolution of *Brinker v. Superior Court* (2008) 165 Cal.App.4th 25, review granted October 22, 2008, S166350 (*Brinker*), as that decision would impact resolution of this action. Gillespie opposed Western Pacific's ex parte application, asserting *Brinker* was not dispositive of this action.

The trial court denied Western Pacific's ex parte application, but set the matter for a noticed hearing on Western Pacific's motion to stay this litigation. On February 10, 2010, the court granted Western Pacific's motion to stay all proceedings until August 2010, pending the decision by the Supreme Court in *Brinker*. Thereafter, the court stayed the matter several more times, the last stay having been issued April 11, 2012, the day before *Brinker* was decided.

Each time the stay was continued, the trial court and both parties acknowledged *Brinker's* importance to resolution of this action. In its August 9, 2010 order extending the stay, the trial court stated, "Counsel stipulate that the *Brinker* case does apply to the case. . . . Counsel agree the stay i[s] appropriate." In January 2011 the parties stipulated

4

"[t]he Supreme Court still has not issued a decision in *Brinker*. Accordingly, the parties agree that a further stay of at least 180 days is appropriate, unless the Supreme Court issues a decision sooner. [¶] . . . The Parties thus request that the Court extend the stay of the action until the next Case Management Conference." In August 2011, when continuing the stay, the trial court acknowledged that "[c]ounsel inform[ed] the court they are [still] waiting a decision from the California Supreme Court." In February 2012 the trial court again extended the stay, noting that "[c]ounsel still waiting on decision from the Calif[ornia] Supreme Court." On April 11, 2012, the trial court again continued the stay "at [the] request of counsel for all parties." Gillespie opposed the motion, arguing: (1) the MAA was both procedurally and substantively unconscionable; (2) Western Pacific waived its right to compel arbitration through unreasonable delay and use of the judicial process, to the prejudice of Gillespie; (3) the MAA was in violation of the National Labor Relations Act (NLRA) and was therefore unenforceable; (4) under the holding in *Gentry, supra,* 42 Cal.4th 443, the MAA would be invalidated; and (5) the MAA barred Gillespie from acting as a private attorney general to recover under PAGA based on the holding of *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489.

F. *Court's Ruling*

At the hearing on Western Pacific's motion to compel arbitration, the trial court addressed both the waiver and unconscionability issues raised by Gillespie in her opposition to the motion to compel arbitration. On the issue of waiver, the court noted that "this has been going on for four years." The court noted that the case had been stayed pending the *Brinker* decision, but stated that "a lot of cost and everything has been

5

expended in litigation and everything, and I just think it's better that I stick with my tentative." As to the issue of unconscionability, the court addressed concerns about the MAA's one-way provision that allowed Western Pacific to terminate the arbitration clause, but "plaintiff does not have that right." The court also inquired about the choice of law provision. Western Pacific acknowledged "[t]he arbitration agreement, it says that either Texas law or the Federal Arbitration Act will apply." However, Western Pacific told the court that, despite what the MAA stated, the claims would be resolved under California law.

Counsel for Gillespie also addressed the clause providing that actions for declaratory relief could be brought in state court, but all other claims must be arbitrated. Counsel pointed out that although that clause was facially neutral, it favored employers as they were the only party likely to seek declaratory relief. The court agreed, stating, "[Y]eah, another reason why it would be unconscionable." The court then took the matter under submission.

Thereafter, the trial court denied Western Pacific's motion finding that "[d]efendant waived [its] right to seek arbitration and the MAA is [u]nconscionable."

DISCUSSION

I. *ANALYSIS*

A. *Waiver*

A trial court may deny a petition to compel arbitration on the ground of waiver. (Code Civ. Proc.,[1] § 1281.2, subd. (a).) Relevant factors to consider in assessing waiver claims include: "'"(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party."'" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196.)

However, courts cannot lightly infer waiver. (*St. Agnes Medical Center v. PacificCare of California, supra,* 31 Cal.4th at p. 1195.) The party asserting waiver bears a heavy burden and "any doubts regarding a waiver allegation should be resolved in favor of arbitration." (*Ibid.*)

---

[1]     All further undesignated statutory references are to the Code of Civil Procedure.

Here, Gillespie cannot meet this heavy burden. As we have noted, *ante*, Western Pacific filed its motion to compel arbitration shortly after the decision in *Brinker* was issued. As we have also noted, in agreeing to multiple stays of the proceedings in this action, the parties acknowledged the importance of *Brinker* to resolution of this action. Thus, we cannot say that Western Pacific's actions evidenced an intent to waive arbitration.

In finding waiver, the trial court relied on litigation activities and expenses that occurred before the action was stayed. In this regard Gillespie submitted two declarations in opposition to Western Pacific's motion to compel arbitration: a declaration from herself and one from her counsel. Her declaration relates to her participation in discovery before the trial court's initial stay order. Her counsel's declaration similarly relates to litigation activity occurring before the initial stay order, with the exception of a statement that putative class members contacted Gillespie's counsel while the stay was pending. However, this ignores the fact that at the time this action was filed, *Gentry, supra,* 42 Cal.4th 443, had held that class action waivers were unenforceable. Therefore, it would have been futile to move to compel arbitration based upon the law existing at that time.

B. *Unconscionabilty*

1. *Applicable authority*

A written contractual provision to submit to arbitration any disputes arising out of the contract is "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281; *Kinney v. United HealthCare*

8

*Services, Inc.* (1999) 70 Cal.App.4th 1322, 1327.)  Unconscionability is one of those grounds.  (Civ. Code, § 1670.5, subd. (a); *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099 (*Discover Bank*).)

"'Unconscionability is ultimately a question of law for the court.'  [Citation.] However, numerous factual issues may bear on that question.  [Citation.]  Where the trial court's determination of unconscionability is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence."  (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89.)

"[T]he doctrine [of unconscionability] '"has both a 'procedural' and a 'substantive' element."'"  (*Little v. Auto Steigler, Inc.* (2003) 29 Cal.4th 1064, 1071; *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 114 (*Armendariz*).) "'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.'  [Citation.]  But they need not be present in the same degree.  'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.]  In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  (*Armendariz, supra,* 24 Cal.4th at p. 114.)

9

2. *Analysis*

a. *The MAA is not procedurally unconscionable*

Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*) *LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)  Here, there is no evidence of "surprise" with regard to the formation of the MAA.  This element refers to situations where an arbitration provision is hidden in an agreement drafted by the party seeking to enforce it.  (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853.)

Here, the MAA is a separate agreement and the arbitration provision is clear and conspicuous.  Thus, the MAA's arbitration provision does not contain any element of "surprise."

Likewise, Gillespie there is no evidence of oppression.  Indeed, at her deposition, after admitting she signed the MAA, Gillespie conceded that she did not even remember being presented with it.  Thus, there is no evidence she signed the MAA unwillingly.

Thus, because there is little or no evidence that the MAA is procedurally unconscionable, Gillespie must demonstrate the MAA's substance was highly unconscionable.

b. *The arbitration provision is not substantively unconscionable*

Substantive unconscionability relates to "the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. . . .  [T]he term must be 'so one-sided as to "shock the conscience."'  (*Pinnacle, supra,* 55 Cal.4th at p.

10

246.) For purposes of unconscionability, an arbitration agreement must lack bilateralism. To be enforceable, it must require both parties to submit their claims to arbitration. (*Armendariz, supra,* 24 Cal.App.4th at pp. 117-120.)

Here, the MAA meets this requirement. It applies to both Western Pacific and Gillespie and requires them both to arbitrate their disputes arising from her employment.

The trial court's comments at the hearing indicated it was concerned regarding two aspects of the MAA: the modification provision and the carve-out for declaratory and equitable relief in paragraph 2. However, neither of these issues supports a finding of substantive unconscionability.

Paragraph 8 of the MAA grants Western Pacific a limited right to modify the terms of the MAA. It must provide 30 days' notice of the modification and changes may only be prospective. In this regard the MAA provides: "This Agreement may be modified or revoked by the Company by providing thirty days written notice to employees. Any modification or revocation shall not be effective until after the thirty day notice period, *shall be prospective only,* and shall not apply to any claims already initiated by either party." (Italics added.)

This provision is not unconscionable. As long as an employer's ability to modify is appropriately limited so as to ensure good faith and fair dealing, unilateral modification provisions are enforceable:

> ""'[W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings."' [Citations.] [The employer's] discretionary power to modify the

11

terms of the personnel handbook in writing notice indisputably carries with it the duty to exercise that right fairly and in good faith. [Citation.] . . . So construed, the modification provision does not render the contract illusory." (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1214.)

Thus, the MAA's modification provision is not unconscionable.

At the hearing on Western Pacific's motion to compel arbitration, the trial court indicated it believed the MAA was unconscionable because paragraph 2 excludes from arbitration declaratory or injunctive relief claims regarding confidentiality, non-competition, or similar obligations. This provision does not render the MAA unconscionable.

This is so because even if the MAA's provision excluding such claims from arbitration was improper, the trial court could have severed it, and indeed was required to do so. In *Little v. Auto Steigler, Inc., supra,* 29 Cal.4th 1064, the California Supreme Court considered an employment arbitration agreement that included a provision providing a right to only the employer to appeal an arbitration award in excess of $50,000. (*Id.* at p. 1071.) Recognizing that the appeal was unilateral, and thus unconscionable, the California Supreme Court held that the trial court was required to sever the offending provision and enforce the balance of the agreement. (*Id.* at pp. 1072-1076.)

Similarly, in *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 985 the Court of Appeal found that a trial court's refusal to sever from an arbitration agreement a provision limiting discovery was an abuse of discretion:

"Even if we assume the discovery provision to be unconscionable, which we do not, the trial court abused its discretion by refusing to sever it. Where, as here, only one provision of an agreement is found to be unconscionable and that provision can easily be severed without affecting the remainder of the agreement, the proper course is to do so." (See *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 101-102 [severing provision in employment arbitration agreement requiring employee to pay certain arbitration costs].)

Thus, if the MAA's provision allowing both parties to seek injunctive or declaratory relief in court is unconscionable because it is only likely that Western Pacific would bring such a claim, the court was obligated to sever it and enforce the remainder of the agreement.

C. *The MAA's Class Action Waiver Is Enforceable.*

Gillespie asserts that the class action waiver provision in the MAA is unenforceable under *Gentry, supra,* 42 Cal.4th 443. However, that decision has now been abrogated by *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct 1740] (*Concepcion*) and *Iskanian v. CLS Transportation Los Angeles* (2014) 59 Cal.4th 348 (*Iskanian.)*

In *Iskanian, supra,* 59 Cal.4th 348, the California Supreme Court held that "[u]nder the logic of *Concepcion,* the FAA [Federal Arbitration Act] preempts *Gentry*'s rule against employment class waivers." (*Id.* at p. 364.) As the court explained: "[T]he fact that *Gentry* 's rule against class waiver is stated more narrowly than *Discover Bank* 's rule does not save it from FAA preemption under *Concepcion.* The high court in *Concepcion* made clear that even if a state law rule against consumer class waivers were limited to 'class proceedings [that] are necessary to prosecute small-dollar claims that

13

might otherwise slip through the legal system,' it would still be preempted because states cannot require a procedure that interferes with fundamental attributes of arbitration 'even if it is desirable for unrelated reasons.' [Citations.] It is thus incorrect to say that the infirmity of *Discover Bank* was that it did not require a case-specific showing that the class waiver was exculpatory. *Concepcion* holds that even if a class waiver is exculpatory in a particular case, it is nonetheless preempted by the FAA." (*Iskanian, supra,* at p. 364.)

The Supreme Court also considered whether the class action waiver was invalid under the NLRA and concluded in light of the FAA's ""liberal federal policy favoring arbitration"' (*Concepcion, supra,* [131 S.Ct. at p. 1745]), that sections 7 and 8 of the NLRA do not represent '"a contrary congressional command"' overriding the FAA's mandate [citation]." (*Iskanian, supra,* 59 Cal.4th at p. 373.) The Supreme Court observed that its conclusion was "consistent with the judgment of all the federal circuit courts and most of the federal district courts that have considered the issue." (*Ibid.*)

As the United States Supreme Court held in *Concepcion,* if the state laws, rules, or "judicial policy judgments" "stand as an obstacle to the accomplishment of the FAA's objectives"—to enforce private parties' arbitration agreements—the state law, rule or judicial policy judgment fails. (*Concepcion, supra,* 131 S.Ct. at p. 1748.) States could no longer "'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable . . . .'" (*Id.* at p. 1747.) Thus, *Concepcion* overruled *Gentry*, and the class action waiver is enforceable.

14

D. *The PAGA Claims*

Gillespie also asserts that even if the MAA prevents her from maintaining a class action against Western Pacific, it does not apply to her PAGA claims under Labor Code section 2698 et seq. Gillespie is correct.

The court in *Iskanian* also addressed the question of whether the plaintiff was required to arbitrate his PAGA claim on an individual basis. Our high court began by summarizing the PAGA provisions: "'Under the legislation, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." [Citation.] [¶] Before bringing a civil action for statutory penalties, an employee must . . . give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency . . . . If the agency notifies the employee and employer that it does not intend to investigate . . . , the employee may commence a civil action.'" (*Iskanian, supra,* 59 Cal.4th at p. 380.) According to the court, these provisions demonstrated that a PAGA representative action is "a type of qui tam action" (*id*. at p. 382) that permits "aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." (*Id*. at p. 379.)

The court then addressed whether California law prohibited the waiver of representative PAGA claims and, if so, whether such a rule was enforceable under the

15

FAA.  The Court first concluded that such claims were unwaivable:  "[A]n employment agreement [that] compels the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law."  (*Iskanian, supra,* 59 Cal.4th at p. 384.)  In reaching its conclusion, the court rejected defendant's assertion that the particular waiver at issue was not against public policy because the plaintiff retained his right to arbitrate his PAGA claim on an individual basis:  "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of representative claims frustrates the PAGA's objectives . . . [because] a single-claimant arbitration . . . for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code.  That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA, even if an individual claim has collateral estoppel effects.  [Citation.]  Other employees would still have to assert their claims in individual proceedings.'"  (*Ibid.*, italics omitted.)

The Court then explained that the FAA did not preempt this rule of California law:  "*Concepcion* made clear [that] a state law rule may be preempted when it 'stand[s] as an obstacle to the accomplishment of the FAA's objectives.'  [Citation.] . . . [T]he rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of private disputes, whereas a PAGA action is a dispute between an employer and the state Agency."  (*Iskanian, supra,* 59 Cal.4th at p. 384, italics omitted.)  The Court concluded:  "Nothing in the text or

16

legislative history of the FAA nor in the Supreme Court's construction of the statute suggests that the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions." (*Id*. at p. 387.)

## DISPOSITION

The order denying Western Pacific's petition to compel arbitration is reversed, and the court is ordered to grant Western Pacific's motion to compel, with the exception of Gillespie's PAGA claim. The parties shall bear their own costs on appeal.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.

17