Filed 12/19/22  Ramos v. Monschein Industries, Inc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| ISAAC RAMOS, Plaintiff and Respondent, v. MONSCHEIN INDUSTRIES, INC., Defendant and Appellant. | F083299 (Super. Ct. No. CV-20-004287) **OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  John Mayne, Judge.

Murphy, Pearson, Bradley & Feeney, Heather A. Barnes, Jonathan M. Blute and Merri N. Engler for Defendant and Appellant.

Falakassa Law, Joshua S. Falakassa; Bokhour Law Group, Mehrdad Bokhour; Ferber Law, Michelle Finkel Ferber and Jennifer R. Lucas for Plaintiff and Respondent.

-ooOoo-

Monschein Industries, Inc. (Monschein) appeals from an order (subject order) denying Monschein's motion to compel arbitration of certain claims brought by Isaac

Ramos in his first amended class and representative PAGA[1] action complaint (FAC) filed in the Stanislaus Superior Court.  We affirm the subject order.

## FACTUAL AND PROCEDURAL BACKGROUND

Monschein hired Ramos as a nonexempt, at-will employee in December of 2014. Monschein terminated Ramos's employment on August 6, 2020.

On October 1, 2020, Ramos, on behalf of himself and all other similarly situated nonexempt employees, filed a class action lawsuit against Monschein alleging various Labor Code and Industrial Welfare Commission wage order violations, unfair competition in violation of Business and Professions Code section 17200 et seq., and a related PAGA claim seeking civil penalties, attorney fees, and costs.

On October 13, 2020, Ramos filed his FAC alleging the same (or similar) violations as his original complaint, and an additional claim.  Specifically, Ramos alleged causes of action for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide required meal periods; (4) failure to provide required rest periods; (5) failure to provide accurate, itemized wage statements; (6) waiting time penalties; (7) unfair competition; and (8) a related PAGA claim.

On or about October 20, 2020, the parties agreed to participate in mediation.  The mediation was scheduled for April 13, 2021, the earliest, mutually convenient date for all participants.

On December 1, 2020, Monschein answered Ramos's FAC with a general denial and asserted 28 affirmative defenses.  Monschein did not assert an affirmative defense related to the existence of an arbitration agreement.[2]

On or about January 8, 2021, Monschein filed a case management conference statement and, on January 13, 2021, filed an amended case management conference

---

[1]Private Attorneys General Act of 2004 (PAGA); Labor Code section 2698 et seq.

[2]Monschein's 28th affirmative defense was a reservation of its right to assert additional defenses "in the event discovery indicates that they would be appropriate."

2.

statement. The form adopted for mandatory use for such statements asks the parties to "[i]ndicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (*check all that apply and provide the specified information*)." Monschein did not check the box for "Binding private arbitration" on its January 8, 2021, case management conference statement.[3]

The mediation went forward on April 13, 2021, but was unsuccessful. That afternoon, Monschein's attorney wrote Ramos's attorney, indicated Monschein wanted to depose Ramos, and requested Ramos's counsel provide dates Ramos could be made available for the deposition. On April 19, 2021, Monschein's attorney reiterated her request to Ramos's counsel. Fifteen minutes later, Monschein's attorney wrote Ramos's counsel indicating Monschein intended to demand arbitration and Monschein would "hold off before initiating depositions."

Over the course of the next two weeks, the parties' attorneys met and conferred concerning Monschein's stated intent to demand arbitration. The attorneys set forth their competing positions concerning the enforceability of the arbitration agreement. Ramos's counsel indicated he would oppose a motion to compel arbitration.

At some point in time, Ramos had propounded a single interrogatory to Monschein seeking contact information for the lawsuit's class members employed by Monschein during the period of "October 1, 2026, [*sic*] to the present." On May 20, 2021, before Monschein had formally demanded arbitration, Monschein responded to the interrogatory indicating, among other things, the request was unintelligible and Monschein could not "discern which individuals it will employee [*sic*] 6 years in the future …."

---

[3]In his declaration, Ramos's counsel avers that the "Binding private arbitration" box was also left unchecked on Monschein's January 13, 2021, amended case management conference statement. However, no copy of the amended statement is included in the record on appeal.

On May 24, 2021, Monschein's counsel sent Ramos's counsel a formal demand to arbitrate Ramos's "individual claims" against Monschein. The following day, Ramos's attorney reiterated Ramos's intent to oppose a petition to compel arbitration.

On June 9, 2021, Monschein filed a motion to compel arbitration of Ramos's individual claims, to stay or dismiss those claims, and to dismiss the class action claims (motion to compel arbitration). In support of its motion to compel arbitration, Monschein filed a declaration of Lisa Hickson (HR manager Hickson) in which she made the following averments: HR manager Hickson was the human resources manager for Monschein. She was responsible for, among other things, "overseeing the new hire orientation of all new employees …." Her pattern and practice included meeting with newly hired employees and discussing with them "all forms and policies necessary for employment as outlined in a new hire orientation checklist and [Monschein's] Employee Handbook." Her standard practice in meeting with newly hired employees was to provide them with "all the required employment forms," including "a tax packet including the W2, and I9, an Injury and Prevention packet, a Heat Illness Prevention packet, the Employee Handbook and separate acknowledgment forms pertaining to each." She then explains to the new hires they need to review the forms and she asks them to confirm their understanding of the forms "by signing and dating each one where required." If the new hire is not set to begin employment that day, then he or she may review the forms on site or take them home and return them the next day. Upon return of the forms, she signs as a representative of the company and "sign[s] the new hire checklist to acknowledge [the new hires] have received and acknowledged all the employment policies and forms."

On July 8, 2021, Ramos filed his opposition to Monschein's motion to compel arbitration. His declaration in support of his opposition contained, among others, the following averments: Ramos learned from his lawyers that he had signed a document containing an arbitration provision and that he did not know what arbitration was until his

4.

lawyers informed him. He "did not know that arbitration would require that [he] waive any rights [he had] to pursue a dispute or claim about [his] employment in court." He indicated he "would never agree to sign a document that would give up [his] rights to file a lawsuit against Monschein in court and with the aid of a jury."

Ramos further averred that, "[w]hen [he] received the Employee Policy Handbook, [he] was only told that it had the company's rules and regulations, to familiarize [himself] with them, and sign the last page to continue working at Monschein"; he had no opportunity to negotiate the provisions of the employee handbook, did not sign the arbitration provision itself, and did not know the employee handbook contained such a provision "until [his] attorneys showed [him]"; he did not recall receiving any of the employment paperwork and, if he was given the paperwork, he "was never given the opportunity nor the time to review or negotiate" its contents. Furthermore, no one at Monschein reviewed the arbitration agreement with him. Finally, he indicated he "would not have the ability to understand" such an agreement without his attorney's help, and was "not in a position to pay for the costs for arbitration, court reporter or other fees associated with arbitration."

On July 14, 2021, Monschein filed its reply in support of its motion to compel arbitration.

The motion to compel arbitration was heard on July 21, 2021. A minute order was thereafter provided in which the trial court modified its tentative ruling, granted Monschein's requests for judicial notice,[4] and denied the motion to compel arbitration. In its modified tentative ruling, the court found that an arbitration agreement did exist. It further found Ramos's "claims that the contract is illusory because the employer can unilaterally change it; shortens the statute of limitations period; and fails to provide the text of the rules governing the arbitrator selection process or discovery are unavailing."

---

[4]Monschein had requested the trial court take judicial notice of Ramos's original complaint and FAC, and Monschein's answer to the FAC.

5.

However, the court found Ramos's "claims that the arbitration agreement substantially impairs [Ramos's] statutory rights (re: attorney's fees, sharing the costs of arbitration, and the lack of judicial review) and that it lacks mutuality are persuasive."

The trial court declined to exercise its discretion to "to sever the unconscionable provisions" of the arbitration agreement due to the "multiple concerns" it had with the agreement. Moreover, because the court denied the motion to compel arbitration due to unconscionability, it did not reach Ramos's claim that Monschein had waived its right to compel arbitration.

On August 30, 2021, the trial court issued the subject order adopting its modified tentative ruling and denying Monschein's motion to compel arbitration.

On September 1, 2021, Monschein timely appealed the subject order.

### *The Arbitration Provision at Issue and Ramos's Acknowledgement of Same*

The arbitration provision at issue is contained in Monschein's "Employee Policy Handbook" dated June 1, 2002 (Employee Policy Handbook). The provision is part of section 25 of the Employee Policy Handbook containing provisions relating to mediation and Monschein's "Open Door Policy." Because the parties refer to various portions of section 25 of the Employee Policy Handbook in presenting their arguments on appeal, we set forth section 25 in its entirety. It reads:

"**25. RESOLUTION PROCEDURE FOR EMPLOYEE PROBLEMS AND COMPLAINTS**

"For those situations involving problems that, for whatever reason, cannot be resolved in-house, the Company has adopted a private, professional way outside the corporation to settle them. This outside process will involve either mediation and/or arbitration. **Mediation** means presenting your legal dispute to a neutral third party for help in finding a solution; **arbitration** means presenting your dispute to a neutral third party for final decision.

"**OUR OPEN DOOR POLICY**

"The Open Door Policy is a **voluntary** process that allows you to talk to your immediate supervisor or to a higher level of management

6.

without fear of retaliation. Although you are encouraged to solve your problem at the lowest possible level, you may take it as far up the chain of command as needed.

"You are free to raise your concerns to **any level of management**. However, whenever possible, you should try to resolve any problems with your immediate supervisor. Because this person is close to your situation, he or she may already be aware of the problem or be in a position to offer a new perspective or some new facts that may be helpful to you.

"If you are dissatisfied with your immediate supervisor's response or need to talk to someone other than your supervisor, you may take your problem to the next higher level of supervision. You are encouraged to follow the specific chain of command in your department or work group, because that is often the most direct way of getting matters resolved. At any time, you may take a problem directly to any level of management.

"**Mediation**

"If you are dissatisfied with the result from the Open Door Policy, you may feel an outside process, such as mediation, is necessary to resolve your problem. Mediation is a meeting in which a neutral third party, called a mediator, helps you and the Company come to an agreement on your own, based on your needs and interests. Mediation is a non-binding process—that means the mediator can make suggestions, but you and the Company are responsible for resolving your dispute. All mediations in this program will use private mediators as agreed upon by the parties.

"You must pay a $50 processing fee to take your legal dispute to mediation. The Company will pay any costs that exceed this $50 fee. To request mediation, submit your request in writing to Monschein Industries Inc. at 6344 Roselle Avenue, Suite 101, Riverbank, California 95367. Once you have made this request and paid your fee, the Company will participate with you in the mediation process.

"Other resolution processes are also available upon request. Keep in mind that if a process uses more than one neutral party, there will be additional cost to you.

"**Typical Mediation Steps**

"• When you or the Company requests mediation, the parties select a local private mediator.

"• The first meeting date is then arranged.

"• You and a Company representative meet with the mediator, who will guide your discussion and help you work out your differences.

"• The mediator may meet privately with you and the Company representative to better understand the problem and help you solve it.

"• If mediation does not resolve the dispute, you or the Company may submit the dispute to arbitration for a final and binding solution.

"**Arbitration**

"Arbitration is a process by which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator makes this decision after both sides present their arguments at the arbitration hearing. While there is no jury, the arbitrator can award any relief you might seek through a court of law.

"The neutral third party arbitrator runs the proceedings, which are held privately. Although arbitration is much less formal than a court trial, it is an orderly proceeding, governed by the rules of procedure and legal standards of conduct.

"**Requesting Arbitration**

"You must pay a $50 processing fee to submit your dispute to arbitration. To request arbitration, submit your request in writing to the Company at 6344 Roselle Avenue, Suite 101, Riverbank, California 95367. Once you have made this request and paid your fee, the Company will be legally bound to participate with you in arbitration. If you have already participated in mediation and have paid a $50 processing fee, you will not have to pay a second $50 processing fee to take your dispute to arbitration.

"Any dispute regarding the employment relationship or its termination for whatever reason or events occurring during the employment relationship shall be subject to binding arbitration, to the extent permitted by law, pursuant to the Employment Dispute Resolution Rules and Regulations of the American Arbitration Association. This includes any rights or claims you may have under (1) Title VII of the Civil Rights Act of 1964 (race, color, religion, sex and national origin discrimination); (2) Section 1981 of the Civil Rights Act of 1866 (discrimination); (3) the Age Discrimination in [E]mployment Act (age discrimination); (4) the Equal Pay Act (equal pay); (5) the California Fair Employment and Housing Act (discrimination, including race, color, national origin, ancestry, physical

8.

handicap, medical condition, marital status, sex or age); (6) the California Labor Code (wages, benefits and other matters); (7) the Fair Labor Standards Act (wage and hour matters); (8) the Employee Retirement Income Security Act (retirement matters); (9) the Consolidated Omnibus Budget Reconciliation Act (insurance matters); (10) Executive Order 11246 (affirmative action); (11) the Federal Rehabilitation Act (handicap discrimination); (12) the Americans with Disabilities Act (discrimination based on disability); and any other federal, state or local laws or regulations regarding employment discrimination.

"Any request for arbitration must be made in writing within 365 calendar days of the occurrence giving rise to the dispute. The arbitrator shall apply the substantive law (and the law of remedies, if applicable) in the state in which the claim arose, or federal law, or both, as applicable to the claim or claims asserted. It is the parties' intention that the arbitrator's decision shall not be subject to judicial review except for fraud or similar misconduct or unless an error appears on the face of the award, or the award causes substantial injustice. Unless the arbitrator orders otherwise, the cost of the arbitration, hearing room and official transcript shall be shared equally by the parties and each party shall be responsible for compensating their attorneys and witnesses and bearing any other costs incurred by them."

On December 8, 2014, Ramos signed an "Employee Acknowledgement of Monschein Industries, Inc. Employee Policy Handbook" (Employee Policy Handbook Acknowledgement). (Some capitalization omitted.) The acknowledgement was likewise signed by HR manager Hickson on behalf of Monschein. The acknowledgement reads:

"I hereby acknowledge receipt of Monschein Industries, Inc. Employee Policy Handbook, effective June 1, 2002. I have read its provisions and agree to the contents and the procedures contained therein. I understand that except for the employment at-will policy, any and all policies or practices can be changed at any time by the Company.

"In accordance of my employment, I agree to conform to the rules and regulations of the Company and agree that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or me. I understand that no manager or representative of the Company other than the President or Vice-President has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing, and that such changes must be in writing.

9.

"My signature below certifies that I understand that the foregoing agreement on employment at-will status is the sole and entire agreement between me and the Company concerning the duration of my employment and the circumstances under which my employment may be terminated. It supersedes all prior agreements, understandings and representations concerning my employment other than my agreement to arbitrate employment disputes."

## DISCUSSION

### I.      Standard of Review

""""There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed."'" (*Chambers v. Crown Asset Management*, *LLC* (2021) 71 Cal.App.5th 583, 591.) "Where … the evidence is not in conflict, we review the trial court's denial of arbitration de novo." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US)*, *LLC* (2012) 55 Cal.4th 223, 236.) """"In determining whether an arbitration agreement applies to a specific dispute, the court may examine only the agreement itself and the complaint filed by the party refusing arbitration …." [Citation.] … Where … "there is no '*factual* dispute as to the language of [the] agreement' [citation] or 'conflicting extrinsic evidence' regarding the terms of the contract [citation], our standard of review of a trial court order granting or denying a motion to compel arbitration under [Code of Civil Procedure] section 1281.2 is de novo." [Citation.] "We are not bound by the trial court's construction or interpretation."'" (*Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 258.) We may affirm the trial court's ruling for any reason, even if it differs from the court's stated reasons. (*MKB Management*, *Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 802; *Hardin v. PDX*, *Inc.* (2014) 227 Cal.App.4th 159, 166.)

Here, the undisputed evidence demonstrates Ramos, by executing the Employee Policy Handbook Acknowledgement, acknowledged receipt of the Employee Policy

Handbook, which contained the arbitration provision at issue. In that Employee Policy Handbook Acknowledgement, Ramos indicated he read the provisions of the Employee Policy Handbook and "agree[d] to the contents and the procedures contained therein." In his declaration, Ramos admits to receiving the Employee Policy Handbook and avers he was told to "sign the last page to continue working at Monschein." Although he states he "did not sign the *arbitration provision* hidden in Monschein's Employee Policy Handbook" (italics added), he does not dispute that the signature on the Employee Policy Handbook Acknowledgement is his.

The trial court was not required to resolve any issues of disputed fact in rendering its decision. Accordingly, our review of the arbitration provision and whether its terms are enforceable is de novo.

Finally, whether the trial court erred in declining to sever portions of the arbitration provision is reviewed for abuse of discretion. (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 83.)

## II. Public Policy Favoring Enforceability of Arbitration Agreements and Grounds to Refuse Enforcement

"Title 9 of the Code of Civil Procedure, as enacted and periodically amended by the Legislature, represents a comprehensive statutory scheme regulating private arbitration in this state. ([Code Civ. Proc.,] § 1280 et seq.) Through this detailed statutory scheme, the Legislature has expressed a 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.)

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) Code of Civil Procedure section 1281.2 provides, in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the

11.

court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for rescission of the agreement." (*Id.*, subds. (a), (b).) "An agreement to arbitrate, like any other contract, is subject to revocation if the agreement is unconscionable." (*Carmona v. Lincoln Millennium Car Wash*, *Inc.*, *supra*, 226 Cal.App.4th at p. 83.)

In opposing Monschein's motion to compel arbitration, Ramos argued both that Monschein had waived any right to compel arbitration and that the arbitration provision in the Employee Policy Handbook was unconscionable. Because we conclude in the following parts of this opinion the trial court did not err in determining the arbitration provision was unconscionable, and did not abuse its discretion in declining to sever portions of the arbitration provision in an effort to cure its deficiencies, we need not determine whether Monschein waived any right to compel arbitration.

## III. The Arbitration Provision Is Unconscionable

"'[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is

unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).)

### A. The Arbitration Provision Was Procedurally Unconscionable

"'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. [Citation.] It focuses on factors of oppression and surprise. [Citation.] The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329 (*Kinney*).) "The second component of procedural unconscionability encompasses an aspect of surprise, with the terms to which the party supposedly agreed being hidden in a prolix printed form drafted by the party seeking to enforce them." (*Ibid.*)

*Kinney* considered both the oppression and surprise aspects of unconscionability. (*Kinney*, *supra*, 70 Cal.App.4th at pp. 1329–1330.) However, both aspects are not necessary to establish procedural unconscionability. "'Ordinary contracts of adhesion, although they are indispensable facts of modern life … [citation], contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching."'" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244 (*Baltazar*).)

In *Kinney*, similar to the case at bar, the defendant employer provided the plaintiff employee its employee handbook containing an arbitration provision. (*Kinney*, *supra*, 70 Cal.App.4th at p. 1329.) The employer required each employee to "acknowledge his or her consent to its terms, including the arbitration provision, as a condition of continued employment with the company." (*Ibid.*) The court stated, "it is clear that the employees had no opportunity to negotiate regarding the terms of the Handbook." (*Ibid.*) The court found sufficient oppression to conclude the arbitration provision was procedurally unconscionable. (*Id.* at pp. 1328, 1329.)

13.

Here, Ramos contended (and Monschein did not dispute) that he was told to sign the last page of the Employee Policy Handbook (presumably, he is referring to the Employee Policy Handbook Acknowledgement form indicating he received and agreed to the terms and conditions of the Employee Policy Handbook) "to continue working at Monschein" and that he was "never given the opportunity to negotiate [its] contents …." HR manager Hickson, in her declaration, refers to the Employee Policy Handbook and Employee Policy Handbook Acknowledgement, along with other forms provided to new hires, as "required employment forms" and "necessary for employment as outlined in a new hire orientation checklist and the Employee Handbook." HR manager Hickson authenticated the "New Hire Checklist" used as part of the onboarding process for Ramos. The checklist contained a box, with a handwritten checkmark, next to the preprinted language "Signed and dated Employee Acknowledgement of Monschein Industries Inc. Employee Policy Handbook."[5]

"'The procedural element of an unconscionable contract generally takes the form of a contract of adhesion.' [Citations.] An adhesive contract is defined as '"a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."'" (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 87–88.) The undisputed facts in this case are sufficient to conclude there was "an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party," i.e., Ramos. (*Kinney*, *supra*, 70

---

[5]The New Hire Checklist contains a checkbox, with a handwritten checkmark, next to the preprinted language "Signed and dated Employee Acknowledgement of Monschein Industries Inc. *Resolution Procedure for Employee Problems and Complaints*." (Italics added.) The italicized language corresponds exactly to the title of section 25 of the Employee Policy Handbook. However, *no separate acknowledgement for the "Resolution Procedure for Employee Problems and Complaints" was included in the record on appeal*. In her declaration, HR manager Hickson authenticated the Employee Policy Handbook Acknowledgement by describing it as "a true and correct copy of the acknowledgement of the arbitration clause within the Employee Handbook …."

14.

Cal.App.4th at p. 1329.) The arbitration provision was presented to Ramos on a take-it-or-leave-it basis, and his agreement to the provision was required in order for him to secure employment with Monschein. It was adhesive in nature.

In its reply brief in support of its motion to compel arbitration, Monschein contends that "[e]ven if adhesion is found, adhesion establishes only a 'low' degree of procedural unconscionability." But, as Monschein further acknowledges in its opening brief, unconscionability is determined on a sliding scale—i.e., "'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa,'" quoting *Armendariz*, *supra*, 24 Cal.4th at page 114.

Our determination the arbitration provision is procedurally unconscionable is not limited to the adhesive nature of the contract. We likewise conclude there was an element of surprise with regard to the arbitration provision.

Monschein contends there was no surprise involved because the "arbitration clause was set forth fully in its own clearly labeled section of Monschein's 28-page Employee Handbook, and highlighted in its Table of Contents as a 'Resolution Procedure for Employee Problems and Complaints.'" The argument is not persuasive.

The Employee Policy Handbook (in which the arbitration provision was contained) was among a variety of documents provided to Ramos on his first day of work. As described by HR manager Hickson, those documents "include[d], but [were] not limited to, a tax packet including the W2 and I9, an Injury and Illness Prevention packet, a Heat Illness Prevention packet, the Employee Handbook and separate acknowledgement forms pertaining to each." Ramos and HR manager Hickson signed the Employee Policy Handbook Acknowledgement on the same day Ramos started employment with Monschein.[6] Moreover, the Employee Policy Handbook alone is 28

---

[6]The Employee Policy Handbook Acknowledgement is dated December 8, 2014. Similarly, the New Hire Checklist contains the following notation: "Date Started: 12/8/14." Although HR manager Hickson states in her declaration that "Ramos was hired on or about

pages long and is single spaced. While it is true that the arbitration provision itself contains headings marked "**Arbitration**" and "**Requesting Arbitration**," the arbitration provision is contained on page 19 of the Employee Policy Handbook and is part of a prolix section on dispute resolution. The arbitration provision is not required to be initialed by the employee. Although the headings are in bold type, the headings and the arbitration provision itself do not appear to be set off in larger type than the remainder of the Employee Policy Handbook. The table of contents, which contains 30 different sections, does not make any mention of "arbitration."

Monschein contends Ramos was given "as much time as he wished to review it before signing" the Employee Policy Handbook Acknowledgment. The statement does not conform to the evidence submitted by Monschein. We note HR manager Hickson only stated in her declaration that, according to her standard practice, and "[d]epending on whether the employee is starting that day or the next day, they have the option to sit and review the forms that day or take them home and bring them back the next day." There is no averment in HR manager Hickson's declaration that she followed her standard practice with regard to Ramos.

Furthermore, the only mention of arbitration in the Employee Policy Handbook Acknowledgement, which HR manager Hickson described as "a true and correct copy of the acknowledgement of the arbitration clause within the Employee Handbook," is the final sentence which, in referring to Ramos's agreement "to conform to the rules and regulations of the Company" and/or his agreement "that [his] employment and

---

December 14, 2014," the "on or about" language in her declaration indicates a level of uncertainty on a subject presumably within her ability to confirm. (HR manager Hickson indicates she had held the position of Human Resource Manager for Monschein "since January 4, 2004.") To resolve this uncertainty, "we may take the factual assertions in a party's appellate brief as admissions." (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 444, fn. 4.) Any uncertainty as to Ramos's start date is resolved by the statement in Monschein's opening brief on appeal, which reads, in relevant part: "Per company policy, Monschein provided the [Employee] Handbook to … Ramos his first day on the job" and allowed him "to review it before signing."

16.

compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or [him]," reads:  "[The foregoing agreement] supersedes all *prior* agreements, understandings and representations concerning [Ramos's] employment other than [his] agreement to arbitrate employment disputes."  (Italics added.)  As Ramos points out, this statement seemingly refers to a *prior* arbitration agreement—not the arbitration agreement contained in the very Employee Policy Handbook he was acknowledging receiving.

Monschein further argues on appeal that "Monschein then ensured [Ramos reviewed the arbitration clause] by presenting him with an Acknowledgement of the Resolution Procedure for Employee Problems and Complaints, which he duly executed." However, as previously noted (see fn. 5, *ante*), the only acknowledgement form in the record on appeal is the Employee Policy Handbook Acknowledgement—despite the fact the New Hire Checklist refers to the Acknowledgement of the Resolution Procedure for Employee Problems and Complaints, and the Employee Policy Handbook Acknowledgement as separate documents.

Monschein also argues HR manager Hickson "reviewed with [Ramos] a New Hire Checklist document which referenced the arbitration clause's terms—in separate line items, with checkboxes to highlight the importance of understanding and reviewing each one."  Again, Monschein's contention does not conform to the evidence on appeal.  HR manager Hickson does not state in her declaration that she "reviewed with [Ramos] a New Hire Checklist."  Rather, it states her standard practice is to meet with a new hire and "discuss[] with him or her all forms and policies necessary for employment as outlined in a new hire orientation checklist and the Employee Handbook."  There is no reference to HR manager Hickson reviewing the checklist itself with Ramos and there is no reference to the arbitration provision or arbitration, in general.  Rather, it appears the checklist was for HR manager Hickson's reference to ensure she obtained all the forms required for a new hire's employment.  Her declaration reads, in part, "Once I have

17.

received all the forms, I sign the new hire checklist to acknowledge that they have received and acknowledged all the employment policies and forms." But, to reiterate, there is no averment HR manager Hickson followed her standard practice with regard to Ramos's hiring.

These circumstances demonstrate there was a degree of surprise present. We conclude there was sufficient procedural inequality to warrant reviewing the arbitration provision for substantive unconscionability.

**B.     The Arbitration Provision Is Substantively Unconscionable**

"'[A] finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided.'" (*Baltazar*, *supra*, 62 Cal.4th at p. 1244.) "'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as "'" overly harsh"'" [citation], "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience"'" [citation], or "unfairly one-sided" [citation].'" (*Ibid*.) As the *Baltazar* court explained, there is no "conceptual difference among these formulations." (*Id.* at p. 1245.) "'All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party" [citation]. These include "terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction."'" (*Id.* at pp. 1244–1245.) "'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.'" (*Ibid*.)

18.

### 1.    *The Arbitration Provision Lacks Mutuality*

"'In assessing substantive unconscionability, the paramount consideration is mutuality.'" (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1287.) Monschein argues the arbitration provision meets this standard.  It relies on language on the first substantive page in the Employee Handbook, which provides, "This handbook sets forth the entire agreement between [Ramos] and the Company …"**7** and the following sentence within the arbitration provision itself, which reads, "Any dispute regarding the employment relationship or its termination for whatever reason or events occurring during the employment relationship shall be subject to binding arbitration, to the extent permitted by law …."  Monschein argues the clause "necessarily includes potential claims of both the employee and the company."

Anticipating Ramos's argument that the statute of limitations provided in the arbitration provision lacks mutuality, Monschein points to the language of the provision that reads, "Any request for arbitration must be made in writing within 365 calendar days of the occurrence giving rise to the dispute."  Monschein argues that this provision, "applies to both parties on its face[ and] the clause contains no language suggesting otherwise."

Ramos counters "the [arbitration] provisions are wholly one-sided in that they bind the employee and not the employer"; and "on the face of the provisions, the language applies only to claims by an employee."  Ramos contends Monschein is arguing "the provisions *impliedly* apply to both parties …, but is unable to point to single provision clearly stating that the employer is required to submit any claim it might have to arbitration (because there is none)."

In its reply, Monschein again relies on the language that "[a]ny dispute regarding the employment relationship or its termination for whatever reason or events occurring

---

**7**In full, the sentence reads, "This handbook sets forth the entire agreement between [Ramos] and the Company as to the duration of employment and the circumstances under which employment may be terminated."

19.

during the employment relationship shall be subject to binding arbitration, to the extent permitted by law, pursuant to the Employment Dispute Resolution Rules and Regulations of the American Arbitration Association."

As Monschein notes, "courts must review and interpret the agreement as a whole" in determining whether a party has met its burden of demonstrating unconscionability.[8] (See *Garner v. Inter-State Oil Co.* (2020) 52 Cal.App.5th 619, 624.) Reviewing the entirety of section 25 of the Employee Policy Handbook, we first note the heading reads, "25. Resolution Procedure for *Employee* Problems and Complaints." (Boldface and some capitalization omitted; italics added.) The heading does not indicate that "employer" problems and complaints are subject to the resolution procedures that follow the heading—only employee problems and complaints.

The first paragraph of section 25 reads:

> "For those situations involving problems that, for whatever reason, cannot be resolved in-house, the Company has adopted a private, professional way outside the corporation to settle them. This outside process will involve either mediation and/or arbitration. Mediation means presenting *your* legal dispute to a neutral third party for help in finding a solution; arbitration means presenting *your* dispute to a neutral third party for final decision." (Italics added.)

Thus, arbitration is *expressly defined* in the Employee Policy Handbook as "presenting *your* dispute to a neutral third party for final decision." (Italics added.) Consistent with section 25's heading, the term "your" appears to be used in the singular tense and refers to the employee, not the employer. Moreover, a search of the term "your" within the remainder of the arbitration provision and the remainder of the Employee Policy Handbook demonstrates that every other time the term is used, it

---

[8]The Employee Policy Handbook provided in the record on appeal does not include the bulk of section 24 of the handbook which, according to the Table of Contents, is entitled "Termination of Employment." Only a partial two lines of what is presumably the tail end of section 24 is provided. However, the page numbers are sequential. Accordingly, we have no way of assessing whether this provision was partially redacted, simply an error in drafting, or whether it is relevant to the appeal.

invariably is referring to the employee—not the employer, and not the employer and employee collectively.

Section 25 then continues with a description of Monschein's "Open Door Policy," which is described as "a **voluntary** process that allows you [i.e., the employee]" to talk to supervisors and management at all levels "without fear of retaliation" to "raise your [i.e., the employee's] concerns …."

Mediation is discussed next in the Employee Policy Handbook and provides, "If you are dissatisfied with the result from the Open Door Policy, you may feel an outside process, such as mediation, is necessary to resolve your problem." Noting the process is nonbinding, the section on mediation states, "you and the Company are responsible for resolving your dispute." It continues by stating "[y]ou [i.e., the employee] must pay a $50 processing fee to take your [i.e., the employee's] legal dispute to mediation[;]" "[t]o request mediation, submit your request in writing to Monschein" and "[o]nce you have made this request and paid your fee, the Company will participate with you in the mediation process."

Although not the issue before us, the discussion concerning mediation is one-sided in that it only refers to the employee's disputes—not the employer's disputes. It does, however, state that "[i]f mediation does not resolve the dispute, you or the Company may submit the dispute to arbitration for a final and binding solution." This does demonstrate some limited mutuality with regard to the parties' ability to submit an *employee's* dispute to arbitration—but it is silent with regard to the parties' ability or right to submit an employer's dispute to arbitration.

Arbitration is discussed next in section 25 of the Employee Policy Handbook. The first paragraph in the section on arbitration describes arbitration in general terms but concludes with the sentence, "While there is no jury, the arbitrator can award any relief *you* might seek through a court of law." (Italics added.) If the sentence was intended to apply mutually, it could easily have been written "the arbitrator can award any relief you

*or the Company* might seek through a court of law"—but it was not written in that manner.

The next discussion in section 25 concerns the manner in which arbitration is to be requested. It reads "*You* must pay a $50 processing fee to submit *your* dispute to arbitration." (Italics added.) It advises the employee, "To request arbitration, submit *your* request in writing to the Company …." (Italics added.) It continues, "Once you have made this request and paid your fee, the Company will be legally bound to participate with you in arbitration." The paragraph then concludes by stating, "If you have already participated in mediation and have paid a $50 processing fee, you will not have to pay a second $50 processing fee to take *your* dispute to arbitration." (Italics added.) Again, the provision speaks only in terms of the employee submitting his or her disputes to arbitration and the manner in which the employee may demand arbitration. It is silent concerning any disputes Monschein might have against the employee or the manner in which Monschein may demand arbitration.

It is only after the aforementioned discussions that section 25 of the Employee Policy Handbook continues with a paragraph that begins, "Any dispute regarding the employment relationship or its termination for whatever reason or events occurring during the employment relationship shall be subject to binding arbitration …." It then provides examples of claims subject to arbitration, which consist only of claims the employee might have. Specifically, the very next sentence reads, in part, "This includes any rights or claims *you* may have under [12 specific legislative acts and an executive order], and any other federal, state or local laws or regulations regarding employment discrimination." (Italics added.) Nothing in this paragraph or the paragraphs of section 25 of the Employee Policy Handbook that precede this paragraph make any mention of an obligation on the part of Monschein to arbitrate disputes it might have against Ramos. That the paragraph begins with the phrase, "Any dispute regarding the employment relationship or its termination … shall be subject to binding arbitration" does ameliorate

22.

the fact that the entire context of section 25 is speaking in terms of the employee's claims against the employer.  Similarly, that the next paragraph begins with the sentence "Any request for arbitration must be made in writing within 365 calendar days of the occurrence giving rise to the dispute," does not alter the fact the entire section 25 speaks in terms of arbitration of the employee's disputes only.

The foregoing review demonstrates there is no "mutuality of the obligation to arbitrate" in the arbitration provision.  (*Nyulassy v. Lockheed Martin Corp.*, *supra*, 120 Cal.App.4th at p. 1287.)

> ### 2.     The Arbitration Provision Imposes Costs Unique to the Arbitration on Ramos and Gives the Arbitrator Discretion to Deny Statutory Remedies

Turning our attention to other specific contentions of the parties, Monschein argues the trial court's ruling that the arbitration clause "substantially impairs [Ramos's] statutory rights (re: attorney's fees [and] sharing the cost of arbitration …)" is misguided and that the court "took the clause's operative language out of context …."  We disagree.

The arbitration provision provides, in part, "Unless the arbitrator orders otherwise, the cost of the arbitration, hearing room and official transcript shall be shared equally by the parties and each party shall be responsible for compensating their attorneys and witnesses and bearing any other costs incurred by them."  Thus, under the above language, the default rule is that each party bears the fees and costs described in the sentence.

Monschein argues, "when the clause is viewed as a whole," the provision is not substantively unconscionable.  Monschein points to the trial court's acknowledgement the arbitration provision "provides that all remedies under the law are available in arbitration" but Monschein is critical of the court's finding that the provision "then leaves it to the discretion of the arbitrator to exclude the right to recover[] attorney's fees."  Monschein concedes, "the arbitration clause's attorney's fee provision could arguably have been stated more clearly" but argues "the key consideration is whether the clause

23.

*limits* the employee's right to seek legally available damages or remedies" and that "so long as the clause **allows** the employee to seek those fees in arbitration, it is permissible." Monschein relies on *Armendariz*, *supra*, 24 Cal.4th 83, and *Graham Oil Co. v. ARCO Products Co.* (9th Cir. 1994) 43 F.3d 1244 (*Graham Oil*), for the foregoing propositions. Neither case states the proposition as does Monschein, and we fail to appreciate the distinction Monschein is attempting to make.

The high court in *Armendariz* wrote: "The principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed," and the court had "suggested as much" in a prior case in which it "held that an agreement to arbitrate a statutory claim implicitly incorporates 'the substantive and remedial provisions of the statute' so that parties to the arbitration would be able to vindicate their '"statutory cause of action in the arbitral forum.'"'" (*Armendariz*, *supra*, 24 Cal.4th at p. 103) Notwithstanding the implicit incorporation of statutory provisions into arbitration provisions, as stated in *Armendariz*, the court found the express language of the agreement before it limited the damages available to the employee and was "contrary to public policy and unlawful." (*Id.* at p. 104.)

In *Graham Oil*, the Ninth Circuit wrote, "[T]he fact that franchisees may agree to an arbitral forum for the resolution of statutory disputes in no way suggests that they may be forced by those with dominant economic power to surrender the statutorily-mandated rights and benefits that Congress intended them to possess." (*Graham Oil*, *supra*, 43 F.3d at p. 1247.) The court then went on to note that the arbitration provision there at issue "purport[ed] to forfeit certain important statutorily-mandated rights or benefits" afforded the plaintiff, including the "right to recover exemplary damages," "expressly forfeit[ed the plaintiff's] statutorily-mandated right to recover reasonable attorney's fees," and "forfeit[ed the plaintiff's] statutorily-mandated right to a one-year statute of limitations on its claims …." (*Id.* at pp. 1247–1248.) The court held that "the arbitration

24.

clause employed by [the defendant] compels [the plaintiff] to surrender important statutorily-mandated rights afforded" to it under the law. (*Id.* at p. 1248.)

Monschein argues the arbitration provision "covers *all* potentially-arbitrable claims between the parties"—a proposition which we rejected above. It further argues that because the provision applies to all claims, "[p]arsing out the parties' respective rights and available remedies as to each and every potential covered claim would result in a convoluted arbitration clause eclipsing the entire [Employee Policy] Handbook in length, and then some." We do not believe this "either/or" argument has merit. Employers and their attorneys are quite capable of drafting enforceable arbitration provisions without including prolix language in those provisions.

Monschein further argues the arbitration provision meets the required standards of *Armendariz* and *Graham Oil* through its language that the "arbitrator shall apply the substantive law (and the law of remedies, if applicable) … as applicable to the claim or claims asserted" and that "[u]nless the arbitrator orders otherwise, the cost of the arbitration, hearing room and official transcript shall be shared equally by the parties and each party shall be responsible for compensating their attorneys and witnesses and bearing any other costs incurred by them." We disagree. As stated above, the default position in the arbitration clause is that the parties will share arbitration costs equally (costs that include those unique to the arbitration) and will be responsible for their own attorney fees and costs "[u]nless the arbitrator orders otherwise."

Monschein next contends that if the arbitrator fails to order the appropriate allocation of fees and costs (including unique arbitration costs), "his or her decision can and will be overturned in court." This is little consolation to an aggrieved employee. Monschein's contention that "the specific wording of the clause's corresponding provisions is irrelevant" ignores the chilling effect such a provision likely has on an employee who wishes to pursue claims against his or her employer.

The fact the arbitration provision states the disputes "shall be subject to binding arbitration, to the extent permitted by law, pursuant to the Employment Dispute Resolution Rules and Regulations of the American Arbitration Association" does not save this provision. First, we note that the American Arbitration Association (AAA) rules submitted by Monschein as part of its augmented record on appeal are titled "Employment [¶] Arbitration Rules and Mediation Procedures" (asserted AAA rules) and were previously known as "National Rules for the Resolution of Employment Disputes."[9] There is no reference in these asserted AAA rules to any document entitled "Employment Dispute Resolution Rules and Regulations of the American Arbitration Association"— the document referenced in the arbitration provision. Assuming the asserted AAA rules provided to this court are the rules that were intended to be referenced in Monschein's Employee Policy Handbook, a newly hired employee attempting to research these rules would be unable to find the applicable rules he or she was being asked to agree to.

Monschein notes the "[asserted AAA r]ules specifically cap the employee's share of arbitration fees and costs at $300; the employer must pay the rest," citing the AAA "Employment/Workplace Fee Schedule [¶] Costs of Arbitration [¶] Amended and Effective November 1, 2020" (some capitalization omitted) sections 1.A. [filing fees for individual "capped at $300, unless the clause provides the individual pay less"]; 6 ["All expenses of the arbitrator, required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the company, unless otherwise agreed by the parties post-dispute"]; and 7 ["The company shall pay the arbitrator's compensation unless the

_____

[9]On June 9, 2022, Monschein requested this court take judicial notice of two documents published by the AAA: (1) the asserted AAA rules; and (2) the Employment/Workplace Fee Schedule [¶] Costs of Arbitration [¶] Amended and Effective November 1, 2020 (italics and some capitalization omitted). On June 30, 2022, we issued an order deferring ruling on Monschein's request for judicial notice pending consideration of the appeal on its merits. We now grant the request. (Evid. Code, § 452, subd. (h) ["Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

26.

individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation"]  In its reply brief, Monschein notes the asserted AAA rules provide:

> "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter 'AAA') or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules. If a party establishes that an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules."

Although the above rule might operate to eliminate the potential that an individual employee claimant might not be subject to fees in excess of those he or she might incur in a court of law, the fact remains there is uncertainty inherent in the arbitration provision as to whether the asserted AAA rules are the rules that were agreed to by the parties.  The fact there is this ambiguity adds to the procedural unconscionability of the arbitration provision and is insufficient to overcome the substantive unconscionability otherwise present in the arbitration provision.  (See *Carbajal v. CWPSC*, *Inc.* (2016) 245 Cal.App.4th 227, 246–247 [failure to identify the governing AAA rules is a factor in determining procedural unconscionability]; but see *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1472 ["failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability"].)[10]

Thus, Ramos's contention that the arbitration provision "deprives [him] of unwaivable statutory remedies that will be available if he prevails on his Labor Code

---

[10]Monschein contends that "unless the 'unconscionability challenge concern[s] some element of the AAA rules,' the employer's 'failure to attach the AAA rules [to the arbitration agreement[ does not affect [the court's] consideration of' unconscionability," quoting *Baltazar*, *supra*, 62 Cal.4th at page 1246.  Here, however, the situation is different.  Not only did Monschein fail to attach the asserted AAA rules to the Employee Policy Handbook in which the arbitration provision was contained, Monschein created ambiguity by referencing the applicable rules by a title different from the asserted AAA rules, and now seeks to overcome otherwise substantively unconscionable provisions by referencing a differently titled set of rules.  Thus, Monschein has created the situation where Ramos's challenge does, in fact, concern some element of the AAA rules.

claims" by requiring him to compensate his own attorneys and imposes upon him costs unique to arbitration has merit and is not overcome by the purportedly applicable asserted AAA rules. Again, the default rule according to the arbitration provision is that a party is required to bear his or her own attorney fees and share equally in specified costs unique to the arbitration "[u]nless the arbitrator orders otherwise."

### 3. The Judicial Review Clause, If Interpreted as Monschein Urges, Does Not Cure the Procedural and Substantive Unconscionability Identified

Monschein contends the trial court erred in finding the judicial review clause within the arbitration provision is "insufficient to 'ensure the arbitrator complie[s] with statutory requirements.'" The clause at issue reads, "the arbitrator's decision shall not be subject to judicial review except for fraud or similar misconduct or unless an error appears on the face of the award, or the award causes substantial injustice."

Monschein contends the term "substantial injustice" "specifically includes 'the enumerated statutory grounds' for vacatur set forth in California Code of Civil Procedure § 1286.2." However, Monschein's citation to authority, *Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1313, does not clearly stand for this proposition. Rather, the court noted "Code of Civil Procedure section 1286.2 sets forth a list of circumstances under which we may vacate an arbitrator's award" and "'[u]nless one of the enumerated grounds exists, a court may not vacate an award even if it contains a legal or factual error on its face which results in substantial injustice.'" (*Ibid.*)

Even if we were to credit Monschein's argument that the clause in the arbitration provision protects an employee's right to seek judicial review in the event an arbitrator's award infringes upon unwaivable statutory rights, the factors discussed in this opinion *ante*, which demonstrate both procedural and substantive unconscionability, render the arbitration provision unconscionable as a matter of law.

**IV. The Court Did Not Abuse Its Discretion in Refusing to Sever Provisions of the Arbitration Provision**

Monschein contends the trial court erred by declining to sever the provisions it found unconscionable. Monschein argues, "only where a private arbitration agreement is so '"permeated" by unconscionability that it cannot be cured by severance' should a court decline to enforce it," quoting *Serafin v. Balco Properties Ltd.*, *LLC* (2015) 235 Cal.App.4th 165 at pages 183 through 184. Monschein contends this is especially true where "concerns of procedural unconscionability are minimal." (See *Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982 [where "the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high"].)

Monschein argues, "[f]or instance, if this Court believes the [arbitration provision] 'impermissibly leaves it to the discretion of the arbitrator to exclude the right to recover[] attorney's fees,' or 'requires the employer or employee to share in all arbitral costs' … the operative language should be severed. [¶] Similarly, if this Court believes the [provision's] judicial review terms do not provide for vacatur for lack of statutory compliance, that language can be stricken outright." (Fns. omitted.)

Ramos contends, among other things, that "if curing the unconscionability of an arbitration provision would require effective re-formation of the contract, not through severance or restriction, but by augmenting it with additional terms, the court may not properly do so." This is a correct statement of law (*Armendariz*, *supra*, 24 Cal.4th at p. 125) that we believe has particular application here.

Civil Code section 1670.5 provides, in relevant part: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (*Id.*, subd. (a).) As noted in *Armendariz*, "Civil Code section 1670.5 does not authorize such

29.

reformation by augmentation, nor does the arbitration statute. Code of Civil Procedure section 1281.2 authorizes the court to refuse arbitration if grounds for revocation exist, not to reform the agreement to make it lawful. Nor do courts have any such power under their inherent, limited authority to reform contracts." (*Armendariz*, *supra*, 24 Cal.4th at p. 125.)

The *Armendariz* court found in that case that two factors "weigh[ed] against severance of the unlawful provisions. First, the arbitration agreement contain[ed] more than one unlawful provision; it ha[d] both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate[d] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. In other words, given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose. [Citation.] [¶] Second, in the case of the agreement's lack of mutuality, such permeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement. Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." (*Armendariz*, *supra*, 24 Cal.4th at pp. 124–125, fn. omitted.)

If the only unconscionable clause in the arbitration provision at issue here was the sentence that reads, "Unless the arbitrator orders otherwise, the cost of the arbitration, hearing room and official transcript shall be shared equally by the parties and each party shall be responsible for compensating their attorneys and witnesses and bearing any other costs incurred by them," we might well consider severing the provision. However, we have concluded the arbitration provision as a whole lacks mutuality and is permeated by unconscionability. There is no single clause, or a limited set of clauses, in the arbitration provision that could be severed and, by doing so, make the arbitration provision mutual

as to both Monschein and Ramos.  We would be required to augment the arbitration provision in order to render it mutual, which we are not allowed to do.

We conclude the trial court did not abuse its discretion by declining to sever clauses within the arbitration provision in an attempt to cure the provision's lack of mutuality.

## V.     The Issue of Waiver Is Moot

Given our conclusion the arbitration provision is unconscionable as a matter of law and the trial court did not err in declining to sever portions of the provision in an attempt to cure its deficiencies, we need not reach the question of whether Monschein waived its right to compel arbitration.

## VI.     Summary

We conclude there is a sufficient amount of procedural unconscionability to subject the arbitration provision in Monschein's Employee Policy Handbook to analysis for substantive unconscionability.  The procedural unconscionability is not minimal and the factors supporting this conclusion include (1) the adhesive nature of the provision; (2) the limited time Ramos had to review the Employee Policy Handbook among the many other documents he received on his first day of employment; (3) the arbitration provision was prolix, and positioned at pages 19 and 20 of the single-spaced Employee Policy Handbook, without any means of directing Ramos's attention to the provision (e.g., by setting it out in type different from the remainder of the document, or by requiring Ramos to initial the provision); (4) no one at Monschein reviewed the arbitration agreement with him, a fact not actually controverted by the declaration of HR manager Hickson; and (5) the ambiguous reference to governing rules of the AAA which did not correspond to the title of the asserted AAA rules Monschein now contends are applicable.

We further conclude there was a high degree of substantive unconscionability in the arbitration provision.  The provision lacks any semblance of mutuality.  It defines arbitration in a manner that expressly encompasses Ramos's claims and is limited to

31.

those claims.  Nowhere in the arbitration provision is there any reference to the arbitration of Monschein's potential claims against Ramos.  Considering the relevant provisions as a whole, the inescapable conclusion is that the arbitration provision is unfairly one-sided.

## DISPOSITION

The subject order denying Monschein's motion to compel arbitration of certain claims brought by Ramos in his FAC is affirmed.  Ramos is entitled to his costs on appeal.


                                                                    PEÑA, J.

WE CONCUR:


HILL, P. J.


SNAUFFER, J.

32.